**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **H.C., M.C., B.R., and A.R.**

**No. 22-0001** (Randolph County 20-JA-101, 20-JA-102, 20-JA-103, and 20-JA-104)

**MEMORANDUM DECISION**

Petitioner Mother T.R., by counsel J. Brent Easton, appeals the Circuit Court of Randolph County's December 3, 2021, order terminating her parental rights to H.C., M.C., B.R., and A.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Andrew T. Waight, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing and neglectful parent and terminating her parental rights without granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Relevant to the instant case, petitioner's boyfriend (hereinafter "the father") and his two children from a prior relationship were the subject of a family court proceeding, in which Child Protective Services ("CPS") became involved. As a result, a CPS worker attempted to visit petitioner and the father, who lived in a home with their two children, H.C. and M.C., and with petitioner's two children from a prior relationship, B.R. and A.R. The father spoke to the worker outside the home and stated that petitioner "did not want anything to do with his kids [from a prior relationship] . . . and that she would not allow them to live in the home with them." On a second occasion, the worker again attempted to visit petitioner and the father's home and knocked on the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

door three times. The children opened the curtains and saw the worker, and the worker could hear an adult female's voice within the home, but no one answered the door. The worker observed a significant amount of trash piled outside the home and a toy kitchen covered in broken glass. The worker again returned to the home on a later occasion, and petitioner and the father finally granted the worker access to the home. The worker observed the home to have a significant roach infestation and the rooms were full of junk and trash. According to the worker, at least two rooms were inaccessible or very difficult to reach due to excessive clutter. The home also lacked sufficient food for the children, and the children were observed to have a significant amount of bug bites on their arms and legs. Based on the foregoing, the worker filed a child abuse and neglect petition in April of 2020.

In October of 2020, the circuit court held an adjudicatory hearing. Petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing and neglecting parent.

In February of 2021, the DHHR filed an amended petition against petitioner. According to the DHHR, then-four-year-old H.C. began exhibiting concerning behaviors, including touching her genitals, which prompted the DHHR to schedule Child Advocacy Center ("CAC") interviews for the children. During H.C.'s interview, the child disclosed that the father touched her but did not describe where on her body he touched her. The interviewer provided the child with an anatomical drawing of a female body and asked the child to point to where the father touched her, and the child pointed to the vaginal area and stated that the father touched her "there." The child stated that the touching did not make her feel good and that it had happened on two occasions. The DHHR further alleged that one of the father's children from a prior relationship made similar disclosures. Petitioner's children, B.R. and A.R., were also interviewed but made no disclosures of sexual abuse.

The circuit court held an adjudicatory hearing on the amended petition in September of 2021. The DHHR presented the expert testimony of a forensic interviewer, who had performed a CAC interview of H.C. According to the interviewer, the child initially did not want to answer any questions and put her head down on the table and covered her ears. Eventually, the child began responding to the questions posed and disclosed that the father touched her and pointed to her vaginal area. The child also disclosed that she did not like petitioner.

H.C.'s first foster parent testified that, while in her care, H.C. touched herself and touched the family dog's penis several times. The child also undressed her dolls and touched them in the vaginal area. The foster parent further stated that, following visits with her parents, the child would urinate on herself and act out. After a few weeks in that placement, H.C. disclosed that her parents touched her and pointed to her vaginal area. H.C.'s second foster parent, a different placement than her first, testified that H.C. made disclosures that her parents touched her "girl parts" and that H.C. pointed to her vagina. The child specifically described occasions in which she would awaken during the night with her parents in her bed touching her. The second foster parent stated that these disclosures occurred "[t]wo to three times, if not more, a week" and that the child disclosed the touching to other people, such as a CPS worker and a doctor. Additionally, the child became very emotional and "shut down" during virtual visits with the parents. According to the second foster parent, H.C. would sit in the corner or try to go to the bathroom to "get away" and, towards the

end of the visits, she would cry, ball up her fists, and state that she did not want to talk to the parents.

A case manager for H.C.'s foster agency testified that, during a virtual visit she had with H.C. in December of 2020, the child asked to speak to her about her "mean mom and dad." The child reported that her parents touched her and, when the case manager asked her where they touched her, the child became upset and put her head down. After giving the child a few moments, the case manager again asked the child where her parents had touched her, and she pointed to her vagina. The child made identical disclosures to the case manager in April of 2021 and June of 2021. The case manager also corroborated the second foster parent's testimony that the child "shut down" during visits with the parents and that she tried to avoid visits by going to the bathroom.

Petitioner denied touching her children in an inappropriate manner. Petitioner further denied that any of her children ever reported inappropriate touching by an adult, nor had she observed them exhibit any sexually reactive behaviors.

Following testimony, the circuit court held its ruling in abeyance so that it could review the children's CAC interviews. By order entered on October 24, 2021, the circuit court adjudicated petitioner as an abusing parent. The circuit court found that the DHHR presented clear and convincing evidence that petitioner sexually abused H.C. The circuit court noted that the child made multiple consistent disclosures of sexual abuse to several different people. Further, H.C.'s sexually reactive behaviors were worse during times when she was visiting with her parents, and the behaviors decreased once visits were suspended. As such, the circuit court determined that the DHHR had presented sufficient evidence to find that the child was an abused child. The court set the matter for disposition.

The circuit court held a dispositional hearing in November of 2021. The DHHR requested that the court take judicial notice of all the testimony presented at the contested September of 2021 adjudicatory hearing, which it did. Petitioner testified and again denied that she had sexually abused any of the children or had any knowledge of sexual abuse by the father. Nevertheless, she requested an improvement period and stated that she took steps to address the home conditions by cleaning and sanitizing. She further indicated that she would comply with all services provided by the DHHR. At the conclusion of the hearing, the circuit court denied petitioner's request for an improvement period finding that she failed to accept "responsibility for the findings of sexual abuse" and that there were no services that could address the sexual abuse of H.C. or remedy the conditions such that the children could be safely returned to the home. The court further found that petitioner's custody would seriously threaten the welfare of the children. The court reiterated its findings of sexual abuse, which constituted aggravated circumstances, and further found that there were no alternatives to the termination of petitioner's parental rights. Accordingly, the court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of abuse in the near future and that termination of her parental rights was necessary for the children's continuity in care and caretakers. Petitioner appeals the December 3, 2021, dispositional order.[2]

_____

[2]H.C. and M.C.'s father's parental rights were terminated below. The permanency plan for those children is adoption by their foster family. B.R. and A.R.'s father was granted a

3

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in adjudicating her as an abusing parent. Petitioner focuses her argument on the alleged inconsistencies of H.C.'s multiple disclosures, claiming that the child "described being touched 'over her clothes' and on her 'leg,' but pointed to her vagina at the same time." Petitioner asserted that the child's claim that the abuse occurred at "Mark's house" was puzzling when no one was able to explain who exactly Mark was or where he lived.[3] Petitioner also raises issue with testimony regarding disclosures made by one of the father's children from a prior relationship, stating that the child did not make any disclosures of sexual abuse against him during her stay at a treatment center. Lastly, petitioner points out that both B.R. and A.R. denied being sexually abused. Petitioner asserts that, given these "inconsistent and confusing elements to H.C.'s allegations," adjudicating petitioner on the grounds of sexual abuse was clearly erroneous.

This Court has previously held that

> [a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at

---

preadjudicatory improvement period, which he successfully completed, and the children were placed in his care. The permanency plan for B.R. and A.R. is to remain in their father's care.

[3]No respondent party nor anyone named Mark was identified during the proceedings.

777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines "abused child" as

> [a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home.

"Physical injury" may include sexual abuse or sexual exploitation. *Id.*

While petitioner argues that the circuit court erred in adjudicating her as an abusing parent, a review of the record reveals that sufficient evidence existed upon which to find that petitioner sexually abused H.C. while she was in petitioner's custody. The DHHR presented several witnesses whose combined testimony demonstrated that H.C.'s many disclosures to multiple persons were consistent, and often unprompted, over the course of the proceedings. Specifically, the child's two foster parents' testimony established that the child reported that petitioner touched her and that she pointed to her vagina while making the disclosure. Further, the child described that the touching occurred after she had gone to bed and that she would awake to find petitioner and the father in her room touching her. A CPS worker also testified that the child made similar disclosures to her. Petitioner was permitted the opportunity to cross-examine these witnesses (apart from the children) and made arguments regarding any alleged credibility issues or CAC interview tactics. Moreover, petitioner testified on her own behalf.

The circuit court weighed the evidence and found that H.C.'s disclosures of sexual abuse were credible. The circuit court found that the children were abused and adjudicated petitioner accordingly. We have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make some determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). While petitioner raises arguments surrounding the disclosures of the father's child from a prior relationship, she fails to demonstrate how that child's disclosures of abuse, or lack thereof, by the father have any bearing on H.C.'s disclosures of abuse by petitioner. Accordingly, we decline to disturb the circuit court's findings that the witness testimony in support of petitioner's sexual abuse of H.C. was credible and that H.C.'s allegations were true. Therefore, we find that petitioner was adjudicated upon sufficient evidence and is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. According to petitioner, she established her entitlement to an improvement period by filing a written motion and testifying that she would comply with services and that she had obtained suitable housing.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement

period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). The circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

We find that petitioner failed to demonstrate that she was likely to fully participate in an improvement period. While petitioner claims she would have complied with services and had taken steps to remedy her home conditions, she failed to accept responsibility for her actions and continuously denied that she had sexually abused H.C. As noted above, the failure to acknowledge the existence of the problem renders an improvement period an exercise in futility. *Id.* Moreover, the circuit court found that there were no services that could address the sexual abuse of H.C. or remedy the conditions such that the children could be safely returned to the home. Given the finding of sexual abuse and petitioner's failure to acknowledge the same, we find no error in the circuit court's denial of petitioner's request for an improvement period.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

In the instant case, the record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. Specifically, petitioner failed to accept responsibility for her actions and denied that she sexually abused H.C. As noted above, this Court has held that a failure to acknowledge the conditions of abuse and neglect "results in making the problem untreatable." *Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363. Moreover, the circuit court found that there were no services that could be offered to remedy the issue of sexual abuse, that the children's safety while in petitioner's custody was threatened, and that the children could never safely be returned to the home. We have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . .

where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4 (citation omitted). Moreover,

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The evidence set forth above demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Consequently, we find no error in the circuit court's decision to terminate petitioner's parental rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 3, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn